UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JARED TUFF,

                    Plaintiff,

          v.                                          6:16-CV-473

VILLAGE OF YORKVILLE POLICE DEPARTMENT,
VILLAGE OF YORKVILLE, POLICE CHIEF DeLUCA,
OFFICER GUCA,

                    Defendants.
_____

THOMAS J. McAVOY,
Senior United States District Judge


                    DECISION & ORDER

## I.    INTRODUCTION

        Plaintiff Jared Tuff commenced this action asserting claims pursuant to 42 U.S.C. §

1983 and New York state law.  Compl. # 1.  Defendants move to dismiss on various

grounds.  Dkt. # 4.  Plaintiff opposes the motion, dkt. # 12, and Defendants have replied.

Dkt. # 13.  The Court will decide the motion without oral argument.  For the reasons that

follow, the motion is granted in part and denied in part.

## II.    BACKGROUND[1]

        On April 22, 2015, Plaintiff, an Africa American male, was driving an automobile east

on Oriskany Blvd. in the Village of Yorkville, New York.  After passing under a traffic light,

Defendant Officer Guca, a member of the Village of Yorkville Police Department, pulled

_____

          [1]For the purposes of this motion, the Complaint's factual allegations are assumed to be true. *See
Fahs Constr. Group, Inc. v. Gray*, 2011 U.S. Dist. LEXIS 7822, at *5-6 (N.D.N.Y. Jan. 27, 2011).

Plaintiff over.  When he approached Plaintiff's car, Guca unbuckled his holster and placed

his hand on his weapon.  Plaintiff asked why he was being pulled over.  Guca told Plaintiff

that he failed to stop at a red light.  Guca then grabbed Plaintiff, pulled him out of his car,

and "slammed him across the hood of the car facing away from the driver's seat." Compl. ¶

13.  Plaintiff felt threatened and fearful, and received bruising as a result of being pulled out

of the vehicle and "slammed" on the hood of the car. *Id.* ¶ 27.  Guca threatened to arrest

Plaintiff if Plaintiff moved.  Guca "patted" plaintiff down, and then searched through

Plaintiff's car although "Guca had no reasonable cause to search the inside of the car." *Id.* ¶

14.  Plaintiff was not charged with having any contraband in the car, but Guca issued

Plaintiff a traffic ticket alleging that Plaintiff failed to stop at a traffic control device.

On the return date of the ticket, Plaintiff requested that the Village Justice set the

matter for trial.  At the ensuring bench trial in Village Court, Guca testified that the light was

red when Plaintiff drove through it.  Plaintiff testified that the light was not red, and

contended that Guca had lied because Guca was unable to see the traffic light from his

vantage point at the time Plaintiff proceeded under the light.  After the trial, Plaintiff "was

advised that the traffic ticket was dismissed and/or that he was not guilty of the infraction."

*Id.* ¶ 21.

Plaintiff maintains that "[t]he policies, procedures and practices of the defendants as

set forth in this complaint violate the rights of plaintiff under the Fourth, Fifth, Eighth, Ninth

and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Section 1983

because: the search was conducted without probable cause or reason to believe that any

contraband, dangerous materials or incriminating objects or weapons would be found.  Thus

each [*sic*] search constitutes an unreasonable search and seizure in violation of the Fourth

Amendment and Fourteenth Amendments of the United States Constitution.  The search

constitutes a gross invasion of the rights of the plaintiff to privacy and due process under

the Fifth Amendment, Ninth Amendment and Fourteenth Amendment to the United States

Constitution." *Id.* ¶ 33; *see also, id.*, ¶ 22, ¶ 28.[2]  Plaintiff also appears to allege that the

Village had a policy of failing to properly train and supervise its police officers in the

appropriate use of physical force. *Id.* ¶¶ 29-30.[3]

Further, Plaintiff contends that the Defendants' actions resulted in deprivations of his

---

[2]Plaintiff alleges that the "type of search" he was subjected to "is a policy and procedure either written or unwritten of the defendant when pulling over individuals such as plaintiff - African Americans - for violation of traffic laws." Compl. ¶ 22.  Plaintiff also alleges that "[d]espite knowledge of these institutionalized practices, the defendants DeLuca and [the] Village have at no time taken any effective action to prevent Police Department personnel from continuing to engage in this type of misconduct." *Id.* ¶ 28.

[3]Plaintiff alleges:

Defendants DeLuca and [the] Village had prior notice of the vicious propensities of defendant Guca but took no steps to train him, correct his abuse of authority, or to discourage his unlawful use of authority.

Defendants DeLuca and [the] Village authorized, tolerated as institutionalized practices, and ratified the misconduct detailed above by:

a. Failing to properly discipline, restrict, and control employees, supervise, including defendants known to be irresponsible in their dealings with citizens of the community;

b. Failing to take adequate precautions in the hiring, promotion, and retention of police personnel, including specifically defendant;

c. Failing to forward to the office of the District Attorney of Oneida County evidence of criminal acts committed by police personnel;

d. Failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to these types of complaints with bureaucratic power and official denials calculated to mislead the public.

Compl. ¶¶ 29-30.

rights under the Fourth, Fifth, Sixth, Eight, Ninth and Fourteenth Amendments. *Id.* ¶ 34.[4]

Under the caption "State Law Theories of Recovery," Plaintiff asserts that "[t]he acts and conduct alleged above constitute actionable torts under the laws of the State of New York including the torts of: a. false arrest; b. assault and battery; c. malicious prosecution; d. abuse of process; e. negligence and [*sic*]; f. gross negligence; g. illegal search." *Id.* ¶ 41. He contends that on July 2, 2015, he served a written verified Notice of Claim "on the

---

[4] Plaintiff alleges:

The acts of the defendants that constitute deprivation of the plaintiff's civil rights and are the basis of the claims in this action include:

a. Denial of Fourth and Fourteenth Amendment rights:

    I. By unlawfully and wrongfully seizing plaintiff's person without probable cause, causing him unlawful detention that they knew or should have known were false;

    ii. By unlawfully and wrongfully seizing plaintiff's person in clear violation of due process.

b. Denial of Fifth and Fourteenth Amendment rights:

    I. By knowingly and willfully submitting false data regarding the transaction that led to plaintiff being issued a traffic ticket;

    ii. By knowingly and willfully uttering false testimony at plaintiff's trial;

    iii. By conspiring to suborn perjured police testimony;

    iv. By knowingly, willfully, and wrongfully concealing information that would have assisted plaintiff in his defense;

    v. By denying due process of law including right to be free from unjustified and excessive force utilized by the police department personnel;

c. Denial of plaintiff's Sixth and Fourteenth Amendment rights:

    I. By permitting and encouraging known perjured testimony to be produced at the trial by the prosecution.

d. Eighth Amendment right to be free from cruel and unusual punishment.

e. Ninth Amendment right.

Compl. ¶ 34.

4

proper officer, agents and employees the [*sic*] Defendants Village and Police Department pursuant to the claims statutes covering these cases," *id.* ¶ 39, and that on August 3, 2015, he served "Amended" Verified Notices of Claims upon "the defendants." *Id.; see also id.,* Ex. A.

Plaintiff attaches as Exhibit A to the Complaint several Notices of Claim, which he claims he filed *pro se*.[5]   The first indicates that it was executed and served on the Oneida County Clerk on July 2, 2015. Compl., Ex. A., p. 1.  It is  against "Officer Guca of the Yorkville Police Dept. in his own capacity and as an individual," and asserts "§ 69.02 Liability for Intentional Torts" arising from an April 7, 2015 traffic ticket issued by Officer Guca. *Id.*  Plaintiff asserts that he was ticketed on April 7, 2015 for running a red light even though the light was yellow, Officer Guco caused Plaintiff to become fearful because Officer Guco was yelling at him  for running a red light, and Officer Guco lied about the facts underlying the traffic ticket at the ensuing trial. *Id.*  The Notice of Claim does not allege that Officer Guco pulled Plaintiff out of the car, slammed Plaintiff on the vehicle's hood, patted Plaintiff down, or searched through the vehicle. *Id.*  The only mention of Chief DeLuca is in the context of Plaintiff's allegation that at the time Officer Guca ticketed him, Officer Guca's eyes were "bulging" and he was sweating.  Plaintiff asserts that when he asked Officer Guca at the trial "about his eyes bulging and sweating, he stated he did not know why, but he told the police Chief DeLuca that it was rain [*sic*] when he admitted in trial that it was not raining." *Id.*  For  relief, Plaintiff seeks "Punitive damages-to punish Officer Guca." *Id.*

Exhibit A to the Complaint also includes three "Amended" Notices of Claim, all of

---

[5]Although Plaintiff filed his Notices of Claim *pro se*, he is represented by counsel in this action.

which were executed and filed with the Oneida County Clerk on August 3, 2015. Compl., Ex. A, pp. 2-4. The first is against "Officer Guca in his own capacity and as an individual," and asserts "Sec. 69.02 Liability for Intentional Torts." *Id.* p. 2. Plaintiff contends that on "April 22nd about 7:39 A.M. Officer Guco pulled me over and gave me a ticket for running a red light, when I did not. On June 29, while in trial, Officer Guco lied under oath by saying he could see the traffic light I went through from the property of Yorkville Auto sales, when he could not. Judge Kaluga ruled in my favor." *Id.* There is no allegation that Officer Guco pulled Plaintiff out of his vehicle, made Plaintiff lie across the vehicle's hood, patted Plaintiff down, or searched through the vehicle. *Id.* There is also no reference to Chief DeLuca in this Notice of Claim. For relief, Plaintiff seeks "Punitive damages-to punish officer Guca." *Id.*

The second is against "Yorkville Police Department, Officer Guca," and asserts "Sec. 69.1 Liability for Negligence" *Id.*, p. 3. The factual allegations are the same as in the first Amended Notice of Claim, but for relief Plaintiff seeks: "Civil Rights Damages-Officer Guca violated my civil rights." *Id.*

The third is against "Yorkville Police Department, Officer Guca," and asserts "Sec. 69.01 Liability for Negligence." *Id.* p. 4. The factual allegations are the same as in the first and second Amended Notices of Claim, but for relief Plaintiff seeks: "Actual Damages-for emotional distress and nightmares." *Id.*

## III.  STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v.*

*Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet does not apply to legal  conclusions, non-factual matter, or "conclusory statements" set forth in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*   While Fed. R. Civ. P. 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Id.* (citation and internal quotation marks omitted).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (citation omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## IV.    DISCUSSION

Defendants move to dismiss all claims against all defendants except the § 1983 excessive force claim against Officer Guca under the Fourth Amendment.  The Court will address Defendants' arguments *seriatim.*

### a.  Police Department As A Proper Defendant

Defendants correctly note that a police department is an administrative arm of a municipality and cannot be sued because it does not exist separate and apart from the municipality and does not have its own legal identity. *See Baggett v. Town of Lloyd*, 2011 U.S. Dist. LEXIS 111565, at *13-*14 (N.D.N.Y. 2011); *Moffett v. Town of Poughkeepsie*, 2012 WL 3740724, at *1, n.1 (S.D.N.Y. Aug. 29, 2012).[6]  All claims against the Village of Yorkville Police Department are dismissed.

**b.  Section 1983 Official Capacity Claims**

Plaintiff sues Defendant Police Chief DeLuca "individually and in his official capacity." Comp. ¶ 4.   Section 1983 "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *De Ratafia v. County of Columbia*, 2013 WL 5423871, at *7 (N.D.N.Y. Sept. 26, 2013)(citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–238 (1974)).   "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690, n. (1978)).   "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471–472 (1985)).   Because Plaintiff has sued the Village of Yorkville, his claims against DeLuca in his official capacity are redundant to the Village's potential § 1983 liability, and are dismissed.

Plaintiff has not specifically stated whether he is suing Guca in his official capacity or personal capacity or both.   To the extent he is suing Guca under Section 1983 in Guca's

---

[6]("Under New York law, the Town of Poughkeepsie Police Department is an administrative arm of a municipality and does not have a separate legal identity.")

official capacity, all such claims are dismissed.

### c. Section 1983 - Supervisory Capacity Claim Againy DeLuca

Defendants argue that to the extent Plaintiff is asserting any § 1983 claims against DeLuca based upon his supervisory capacity as the Police Chief, the claims should be dismissed for lack of personal involvement.

"It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." *Odom*, 772 F. Supp. 2d at 403 (quoting *Colon*, 58 F.3d at 873); *see also Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).[7]

The Complaint contains no specific allegation about DeLuca's personal involvement in any of the events underlying this case, instead making only conclusory allegations about DeLuca's responsibilities and supposed failures after the alleged constitutional violations

---

[7](noting that the continued vitality of all five *Colon* factors set forth above remains an open question post-*Iqbal*)

had occurred.  A § 1983 claim cannot be grounded on barebones, conclusory assertions.

*See De Ratafia*, 2013 WL 5423871, at *9.   Plaintiff's argument that DeLuca was personally

involved because he "had the opportunity to dismiss/withdraw the ticket and chose not to,"

Pl. Mem. L. p. 5, relies on facts not alleged in the Complaint.   Even if these facts were

alleged, DeLuca's supposed inaction, in the form of opting not to withdraw a traffic ticket

that another police officer had already issued, does not rise to the level of personal

involvement in underlying constitutional violations.   Plaintiff fails to present factual

allegations plausibly indicting that DeLuca (1) participated directly in the alleged

constitutional violations committed by Guca; (2) failed to remedy a constitutional violation

after being informed of it;[8] (3) created a policy or custom under which unconstitutional

practices occurred, or allowed continuance of such a policy or custom; (4) was grossly

negligent in supervising Guca; or (5) exhibited deliberate indifference to Plaintiff's rights by

---

[8]Plaintiff alleges in his memorandum of law in opposition to defendants' motion to dismiss:

> After plaintiff received the ticket, he went to the Village Offices and spoke with Chief DeLuca and told him what had happened. After speaking with him, plaintiff got the impression from him that the ticket was going to be dismissed or withdrawn. Instead it was not and plaintiff was forced to represent himself at the trial of the ticket which was held on June 29, 2015.

Pl. Mem. L. p. 3.

These facts, on their face, do not indicate that DeLuca was advised of an *ongoing* constitutional violation that he could have remedied by withdrawing the traffic ticket. Assuming for purposes of argument that when Plaintiff indicates that he told Chief DeLuca "what had happened," Plaintiff was referring to being subjected to excessive force and an unreasonable search of his vehicle after being stopped by Officer Guca, this information did not convey to Chief DeLuca that there was an ongoing constitutional violation.  Assuming on the other hand that Plaintiff was referring to his contention that he was improperly ticketed for driving through a red light, this is certainly the type of response many ticketed-drivers have and, in itself, does not indicate that a constitutional violation had occurred or was ongoing.  Furthermore, under such circumstances an objectively reasonable response would be to allow the merits of the ticket to be adjudicated through the courts.

Plaintiff's allegation that DeLuca failed "to forward to the office of the District Attorney of Oneida County evidence of criminal acts committed by police personnel" pleads no viable constitutional deprivation against Plaintiff committed by DeLuca, or known to him and ignored.

failing to act on information indicating that unconstitutional acts were occurring.[9]  Because

Plaintiff's non-conclusory factual allegations fail to present a plausible basis to satisfy any of

the *Colon* factors, the §1983 claims against DeLuca are dismissed without prejudice to

repleading.[10]

### d.  *Monell* Claim Against the Village

Defendants contend that Plaintiff fails to state a factually plausible claim under

*Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), because

"[n]owhere in the complaint does plaintiff make any factual allegations to support a

conclusion that the Village had unconstitutional customs or policies that caused a

deprivation of a constitutional right. " Def. Mem. L. p. 10; *see also id.* pp. 9-10.  In this

regard, defendants argue that "[t]he only factual allegations relate to Guca's alleged actions

in connection with ticketing plaintiff for running a red light.  However, proof of a single

incident of unconstitutional activity here would not be sufficient to impose *Monell* liability."

*Id.* p. 10 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985)).

In opposition, Plaintiff merely asserts that "[t]here is sufficient allegations in plaintiff's

complaint to sustain actions against the Village of Yorkville.  Upon discovery it will be clear

to the parties as to the exact involvement of the Village of Yorkville.  After discovery, it may

be that plaintiff will seek court approval for filing an amended complaint."  Pl. Mem. L. pp.

---

[9]*See* fn. 8, *supra.*

[10]While Plaintiff has not asked for leave to replead any dismissed claim, "'this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6).'" *Rojas v. Roman Catholic Diocese of Rochester*, 557 F. Supp. 2d 387, 400 (W.D.N.Y. 2008)(quoting *Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006)).  Of course, if Plaintiff intends to replead any claims that are dismissed without prejudice to repleading, he must do so in accordance with the dictates of Fed. R. Civ. P. 8(a) and 11(b).

5-6.

To prevail on a § 1983 claim against a municipality, a plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights. *Monell*, 436 U.S. at 690–91. A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. *Id.* at 694. Rather, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries.... Second, the plaintiff must establish a casual connection—an 'affirmative link'—between the policy and deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985), *cert. denied*, 480 U.S. 916 (1987). Therefore, in order to establish municipal liability, Plaintiff must establish that an identified municipal policy or practice was the "moving force [behind] the constitutional violation" that he suffered. *Monell*, 436 U.S. at 694; *see also Anderson v. City of New York*, 657 F. Supp. 1571, 1575–76 (S.D.N.Y. 1987).[11]

*Monell* claims must satisfy the *Iqbal* and *Twombly* plausibility standard. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011). "[T]he boilerplate *Monell* claims often included in many § 1983 cases . . . do not rise to the level of plausibility." *Santiago v. City of New York*, 2009 WL 2734667, at *3, 2009 U.S. Dist. LEXIS 75372, at *7 (E.D.N.Y. Aug. 18, 2009) (dismissing *Monell* claim); *see Plair*, 789 F. Supp. 2d at 469 (collecting cases). "Furthermore, it is well established that a single incident does not give rise to an unlawful practice by subordinate officials 'so permanent and well-settled as to constitute 'custom or usage.''" *Plair*, 789 F. Supp. 2d at 469 (quoting *City of St. Louis v. Praprotnik*,

---

[11] (A plaintiff also "must link the behavior in question to the policy of failure to discipline—for example, the officer must have known of the policy at the time he allegedly committed the civil rights violations.")

485 U.S. 112, 127 (1988) and citing *Sorlucco v. New York City Police Department*, 971 F.2d 864, 870 (2d Cir.1992)[12] and *Anderson*, 657 F. Supp. at 1574[13]).

For the most part, Plaintiff relies on conclusory allegations arising from a single incident to fill the gaps in his complaint between Guco's conduct and a Village policy, custom or practice that caused Plaintiff a constitutional injury. However, Plaintiff alleges that the Village "had prior notice of the vicious propensities of defendant Guco but took no steps to train him, correct his abuse of authority, or discourage his unlawful use of authority." Compl. ¶ 29. While a § 1983 failure to train or supervise claim cannot be grounded on barebones, conclusory assertions, *see De Ratafia*, 2013 WL 5423871, at *9, Plaintiff has alleged enough to allow his failure to train or supervise claim against the Village to continue. Whether Plaintiff can establish the required elements of the claim can be tested after discovery. For present purposes, Defendants' motion on this ground is denied.

### e. Section 1983 Illegal Vehicle Search Claim

Defendants assert that Plaintiff's Section 1983 illegal search claim should be dismissed because he alleges that after he was removed from the vehicle, he was "facing away from the driver seat" and only heard "noises" that sounded like Guca was "going through" plaintiff's vehicle. These facts, Defendants contend, are insufficient to support a plausible claim that Guca unlawfully searched Plaintiff's vehicle.

### 1. Fourth Amendment

Accepting the alleged facts as true, and drawing reasonable inferences in Plaintiff's

---

[12](municipality may not be held liable under Section 1983 for isolated unconstitutional acts of its employees)

[13]("plaintiff cannot infer a policy from the alleged violation of his own civil rights.")

favor, there are sufficient factual allegations from which a reasonable fact finder could conclude that Plaintiff heard Guca enter Plaintiff's vehicle while Plaintiff was lying on the hood. Given these circumstances, it would be a reasonable inference that Guca searched the vehicle while he was in it. Further, accepting Plaintiff's allegations as true, Officer Guca lacked a legal justification to search Plaintiff's vehicle. Thus, the allegations are sufficient to support a plausible Fourth Amendment illegal search claim. Defendants' motion on this ground is denied.

### 2. Fifth, Eighth, Ninth and Fourteenth Amendments

However, Plaintiff asserts his illegal search claim not only under the Fourth Amendment, but also the Fifth, Eighth, Ninth and Fourteenth Amendments.

### A. Fifth Amendment

The Fifth Amendment has no application in this case. The Fifth Amendment solely governs the conduct of federal government and federal employees, and does not regulate the activities of state officials or state actors. *Maddox v. Fowler*, 2015 WL 4366222, at *10 (N.D.N.Y. July 16, 2015). Because Plaintiff's lawsuit does not allege a deprivation of his rights by the federal government, all claims premised upon the Fifth Amendment are dismissed.

### B. Eighth Amendment

Likewise, the Eighth Amendment has no application in this case. The Eighth Amendment prohibition on the infliction of cruel and unusual punishments applies only to those individuals convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Because the facts do not indicate that Plaintiff was convicted of a crime, the Eighth Amendment claim

14

is inapplicable.  Thus, all claims premised upon the Eighth Amendment are dismissed.

### C.  Ninth Amendment

The Ninth Amendment provides no basis for Section 1983 liability.  The Ninth Amendment "is recognized as a rule of construction, not one that protects any specific right, [and thus] no independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action." *Rini v. Zwirn*, 886 F. Supp. 270, 289 (E.D.N.Y. 1995)(citing Laurence H. Tribe, *American Constitutional Law* § 11–3, at 774–75 (2d ed. 1988)); *see Barnett v. Carberry*, 420 Fed.Appx. 67, 69 (2d Cir. 2011),[14] *cert. denied*, 132 S. Ct. 248 (2011); *Bussey v. Phillips*, 419 F.S upp.2d 569, 586 (S.D.N.Y. 2006).[15]  Thus, all claims premised upon the Ninth Amendment are dismissed.

### D.  Fourteenth Amendment

The Fourteenth Amendment also does not apply to Plaintiff's illegal search claim. Because the Fourth Amendment provides an explicit textual source of constitutional protection for Plaintiff's alleged constitutional injury, he has no basis for a due process claim based upon the alleged illegal search of his vehicle. *Albright v. Oliver*, 510 U.S. 266, 273 (1994).  Accordingly, Plaintiff's Fourteenth Amendment due process claim based upon the alleged search of Plaintiff's vehicle is dismissed.

### f.  Section 1983 False Arrest Claim

The Complaint alleges that Defendants violated Plaintiff's Fourth and Fourteenth

---

[14](holding that the Ninth Amendment does not provide "an independent source of individual rights; rather, it provides a rule of construction that we apply in certain cases") (citation omitted)

[15]("[T]he Ninth Amendment refers only to unenumerated rights, while claims under § 1983 must be premised on specific constitutional guarantees.")

Amendment rights "by unlawfully and wrongfully seizing plaintiff's person without probable cause . . . in clear violation of due process." Compl. ¶ 34 (a). Defendants argue that this claim must be dismissed because (1) Guco had probable cause to detain Plaintiff for purposes of issuing him a traffic ticket; (2) the issuance of a traffic ticket or court summons does not constitute a seizure under the Fourth Amendment for purposes of establishing a false arrest claim; (3) the facts are insufficient to support a false arrest claim because there are no allegations that Guco handcuffed Plaintiff, used a weapon to detain him, or transported him away from the scene of the traffic stop.

### 1. Fourth Amendment

While "[c]ourts ... have repeatedly held that the issuance of a traffic ticket or court summons alone does not constitute a seizure under the Fourth Amendment for the purposes of establishing a false arrest ... claim," *LoSardo v. Ribaudo*, 2015 WL 502077, at *5 (E.D.N.Y. Feb. 5, 2015), Plaintiff's allegations are susceptible to a reading that he was unlawfully arrested within the meaning of the Fourth Amendment when he was physically removed from his vehicle without reason, "slammed" across the hood of the vehicle, patted down, and told not to move. These facts, accepted as true, are sufficient to present a plausible claim that Plaintiff was falsely arrested for a period of time beyond that which was required for Guco to issue Plaintiff a traffic ticket. *See Cross v. City of Albany*, 2016 WL

6106476, at *3 (N.D.N.Y. Oct. 19, 2016);[16] *see also LoSardo,* 2015 WL 502077, at *5.[17]

Moreover, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' [under the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "Automobile 'stops must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.'" *Cross*, 2016 WL 6106476, at *3 (quoting *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994)). Taking Plaintiff's factual allegations as true, Guco neither had probable cause nor reasonable suspicion to believe that Plaintiff had committed "a traffic offense—however minor." *Scopo*, 19 F.3d at 782. Under such circumstances, Plaintiff states a plausible Fourth Amendment claim of false arrest. *See Cross*, 2016 WL 6106476, at *4. Accordingly, Defendants' motion on this ground is denied.

### 2. Fourteenth Amendment

However, the Fourteenth Amendment Due Process Clause does not apply to Plaintiff's false arrest claim because the Fourth Amendment provides an explicit textual source of constitutional protection for Plaintiff's alleged constitutional injury caused by that

---

[16] ("Under § 1983, the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure for purposes of establishing a false arrest claim. On the other hand, temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' under the Fourth Amendment.") (interior quotation marks and brackets omitted; citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996) and *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010))

[17] (To establish a false arrest claim under § 1983, a "plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.")

arrest. *Albright*, 510 U.S. at 273; *see Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975).[18]

Accordingly, Plaintiff's Fourteenth Amendment due process claim based upon his arrest is dismissed.

### g. Section 1983 False Testimony Claim - Officer Guca

Plaintiff alleges that his rights under the Fifth and Fourteenth Amendment Due Process Clauses, and an undefined right under the Sixth Amendment, were violated because Guca testified falsely at his traffic court trial. Compl. ¶¶ 34(b) & (c). Defendants contend that the claim cannot survive because the Supreme Court has held that police officers have absolute immunity from liability for damages arising out of false testimony. Def. MOL, p. 15 (citing, inter alia, *Briscoe v. La Hue*, 460 U.S. 325 (1983)). In opposition, Plaintiff argues:

> 5th Amendment Claim: the false data is the testimony of the defendant Guca-clearly it was impossible for the defendant to see the traffic light as the plaintiff was found not guilty after the conclusion of the trial. Proof of the location of the police car and the ability to see the traffic light will be ascertained at the trial of this matter with pictures and/or videos.
>
> * * *
>
> 14th Amendment Claim: This claim too should not be dismissed that [*sic*] plaintiff in the complaint and in his attached affidavit have [*sic*] shown to the court that his due process [*sic*] was violated.

Pl. Mem. L. p. 7. Plaintiff neither offers an argument directed to the Sixth Amendment, nor addresses *Briscoe* and its progeny.

The immunity explained in *Briscoe* is dispositive of Plaintiff's claim.

[T]he principles underlying judicial and prosecutorial immunity "also apply to

---

[18]("The Fourth Amendment was tailored explicitly for the criminal justice system, and it[ ] ... always has been thought to define the 'process that is due' for seizures of person or property in criminal cases....")

witnesses, who perform a somewhat different function in the trial process but whose participation in bringing the litigation to a just—or possibly unjust—conclusion is equally indispensable." *Briscoe v. La Hue*, 460 U.S. 325, 345–46, 103 S. Ct. 1108, 75 L. Ed.2d 96 (1983). In *Briscoe*, the Supreme Court expressly held that police officers have absolute immunity from liability for damages arising out of false testimony. In so ruling, the Supreme Court "acknowledged the danger that a police officer or other witness may provide purposefully false testimony and escape liability," *Rolon v. Henneman*, 517 F.3d 140, 145 (2d Cir. 2008)(citing *Briscoe*, 460 U.S. at 345), as well as "the possibility that, despite the truth-finding safeguards of the judicial process, some defendants might ... be unjustly convicted on the basis of knowingly false testimony by police officers." *Briscoe*, 46 U.S. at 345. However, the Court was concerned that without such immunity, "[a] witness's apprehension of subsequent damages liability might induce ... self-censorship," which might "deprive the finder of fact of candid, objective, and undistorted evidence." *Id.* at 333.

*Paige v. City New York*, 2011 WL 65667, at *5 (E.D.N.Y. Jan. 7, 2011).

"In light of the foregoing, it is clear that, to the extent that Plaintiff's allegations against Officer [Guco] suggest that this police officer may have perjured himself during [Plaintiff's] trial . . ., Plaintiff cannot recover damages for this perjury." *Paige*, 2011 WL 65667, at *6 (citing *Briscoe*, 460 U.S. at 345–46). Thus, Defendants' motion in this regard is granted, and Plaintiff's Section 1983 False Testimony claim against Officer Guca is dismissed.

### h. Section 1983 False Testimony Conspiracy Claim

Plaintiff also alleges in conclusory fashion that "defendants" denied him his "Fifth and Fourteenth Amendment rights . . . by conspiring to suborn perjured police testimony." Compl., ¶ 34(b)(iii). However, Plaintiff fails to plead sufficient facts plausibly suggesting a "meeting of the minds" between any defendants regarding Guca's testimony at Plaintiff's

19

trial. *See Farag v. U.S.*, 587 F. Supp. 2d 436, 470–71 (E.D.N.Y. 2008).[19] Moreover, because there is no viable claim against Officer Guco for providing false testimony, there is no viable conspiracy claim based upon an agreement to provide this testimony. *See Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009).[20] Accordingly, the Section 1983 conspiracy claim based upon an alleged agreement between the defendants to suborn perjury at Plaintiff's trial is dismissed.

### I.  Section 1983 Concealment of Evidence Claim

Plaintiff's allegation that the Defendants concealed information that would have assisted him in his defense, Compl. ¶ 34(b)(iv), amounts to nothing more than a conclusory allegation.  There is no specific factual allegation supporting a plausible claim in this regard. Accordingly, the motion is this regard is granted and the claim based upon the alleged concealment of exculpatory material is dismissed without prejudice to repleading.

### j.  Section 1983 Excessive Force - Due Process Claim

Plaintiff's claim that he was denied constitutional due process because he was subjected to excessive force, Compl. ¶ 34(b)(v), is subsumed within his Fourth Amendment excessive force claim.  Because the Fourth Amendment provides an explicit textual source of constitutional protection for Plaintiff's alleged constitutional injury, he has no basis for a separate due process claim based upon the use of excessive force. *Albright*, 510 U.S. at 273.  Accordingly, the Fourteenth Amendment due process claim based on the excessive

---

[19](To establish a § 1983 civil rights conspiracy, "a plaintiff must, *inter alia*, 'provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the [violation of plaintiff's constitutional rights].'") (quoting *Romer v. Morgenthau*, 119 F. Supp.2d 346, 363 (S.D.N.Y. 2000) (internal quotation marks omitted))

[20](Because Plaintiff failed to establish an underlying Section 1983 cause of action, "the claim for conspiracy also fails.").

use of force is dismissed.

### k.  Section 1983 Encouraging Prosecution to Use Perjured Testimony Claim

Plaintiff contends that his constitutional due process rights were violated by the defendants "permitting and encouraging known perjured testimony to be produced at the trial by the prosecution." Compl. ¶ 34 (c).  Plaintiff has provided insufficient factual allegation indicating that any of defendants had control over the testimony produced at the trial by the prosecution, or that any of the defendants encouraged known perjured testimony to be produced.  Moreover, as indicated above police officers have absolute immunity from damages for alleged perjured testimony at trial.  Accordingly, the claim in this regard is dismissed.

### l.  First Amendment Claim

In the Complaint, Plaintiff makes reference to the First Amendment by alleging that the action arises under "the provisions" of this amendment. Comp. ¶ 7.  However, Plaintiff fails to allege facts plausibly suggesting that his rights under the First Amendment were violated.  Accordingly, the First Amendment claim is dismissed without prejudice to repleading.

### m.  State Law Claims - Notices of Claim

Defendants contend that Plaintiff's state law claims for false arrest, assault and battery, malicious prosecution, abuse of process, negligence, gross negligence, and illegal search should be dismissed because Plaintiff failed to comply with the notice-of-claim requirements of New York law.  Defendants argue that only two of the four Notices of Claim

attached to the Complaint were served on the Village; [21] the two that were served on the

Village were "Amended" Notices of Claim dated August 3, 2015, which is more than 90

days after the April 22, 2015 traffic stop; Plaintiff never moved for leave to serve a late

Notice of Claim, or to have his Amended Notices of Claim deemed timely served *nunc pro*

*tunc* to July 2, 2015; none of the Notices of Claim allege that Plaintiff was pulled out of his

vehicle, slammed on the hood, patted down, and had his vehicle searched; even if Plaintiff

had served the July 2, 2015 Notice of Claim (Compl. Ex. A, p. 1) on the Village, he would

still be barred from pursuing his state law claims because this Notice of Claim pertained to a

traffic ticket allegedly issued on April 7, 2015, not April 22, 2015, and did not include any

allegations about a search, a seizure, or the use of force.   Thus, Defendants contend all

state law claims must be dismissed.

In opposition, Plaintiff argues that he inadvertently omitted from the Complaint two

July 2, 2015 Notices of Claim.  He attaches the two Notices of Claim to his affidavit that he

submitted in opposition to Defendants' motion.

Although the Court is supposed to limit its review to the Complaint and documents

attached thereto, and despite that it is somewhat suspect that Plaintiff served three Notices

of Claim on the Village on July 2, 2015 because he asserts in the Complaint that he served

a single Notice of Claim on the Village on this date, *see* Compl. ¶ 39,[22] the Court will

examine the Notices of Claim attached to Plaintiff's affidavit to resolve this aspect of the

---

[21] Defendants contend that Plaintiff never served the July 2, 2015 Notice of Claim on the Village (Dkt. 1-1 Page 1 of 4), nor did the Village receive that Notice of Claim by any method.  Defendants also contend that Plaintiff never served the August 3, 2015 "Amended" Notice of Claim at Docket 1-1 Page 2 of 4.

[22]("On or about July 2, 2015, the plaintiff caused *a* written verified Notice of Claim to be filed with an served on the proper officer, agents and employees [*sic*] the Defendants . . . .")(emphasis added).

motion.

The two Notices of Claim attached to Plaintiff's affidavit are both against "Yorkville Police Dept., Officer Guco," and both allege that the "nature of the claim" is "§ 69.01 Liability for Negligence." Both indicated that they were executed on July 2, 2015, and both contain a stamp indicating that they were served on the Oneida County Clerk on July 2, 2015. Like the July 2, 2015 Notice of Claim attached to the Complaint (Compl. Ex. A, p. 1), both concern an April 7th, 2015 traffic stop during which Plaintiff asserts that he was ticketed for running a red light even though the light was yellow. Also like the July 2, 2015 Notice of Claim attached to the Complaint, Plaintiff alleges in both that Guco caused him to become fearful because Guco was yelling at Plaintiff for running a red light, that Guco lied about the facts underlying the traffic ticket at trial, and that when Guco was asked at trial "about his eyes bulging and sweating, he stated he did not know why, but he told the police Chief DeLuca that it was rain [*sic*] when he admitted in trial that it was not raining." Neither Notice of Claim alleges that Officer Guco pulled Plaintiff out of the car, made Plaintiff lie across the vehicle's hood, patted Plaintiff down, or searched through the vehicle. *Id*. For relief, Plaintiff seeks "Actual Damages-for the emotional distress and nightmare [*sic*]" and "Civil Rights Damages-Police officer violation of civil rights."

In reply, Defendants argue that even if Plaintiff served all six of the Notices of Claim on the Village,[23] his state law claims should be dismissed because none of the Notices of Claim satisfy the statutory requirements that a claimant specify the nature of the claim, the manner in which it arose, and the damage or injury sustained. Def. Reply Mem. L. p. 5.

---

[23]Also attached to Plaintiff's affidavit are illegible U.S. Postal Service certified mail receipts which, Plaintiff contends, proves that "all Notices of Claims [*sic*] were filed within 90 days." Pl. Mem. L. p. 8.

Further, Defendants contend that Plaintiff's three July 2, 2015 Notices of Claim all pertain to an April 7, 2015 traffic stop whereas the instant action arises from an April 22, 2015 traffic stop. Defendants assert that while the three August 3, 2015 Amended Notices of Claim pertain to the April 22, 2015 traffic stop, the Amended Notices of Claim were untimely because more than 90 days had elapsed since the April 22, 2015 traffic stop.

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. New York City Health & Hospitals Corp.*, 164 F.3d 789, 793 (2d Cir.1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). Under New York law, a notice of claim is a mandatory condition precedent to bringing a tort claim against a municipality. *See* N.Y. CPLR § 9801; N.Y.Gen. Mun. Law §§ 50–e, 50–I; *Hillary v. Village of Potsdam*, 2015 WL 902930, at *9–10 (N.D.N.Y. Mar. 3, 2015); *Brennan v. Albany Cnty.*, 2005 WL 2437026, *6 (N.D.N.Y. Sept. 30, 2005). New York General Municipal Law § 50-e requires service of a notice of claim within ninety days after the claim arises. *See* N.Y. Gen. Mun. Law § 50-e(1)(a). Among other things, a notice of claim must state the nature of the claim and "the time when, the place where and the manner in which the claim arose[.]" N.Y. Gen. Mun. Law § 50-e(2).

This notice requirement is designed "[t]o enable authorities to investigate, collect evidence and evaluate the merit of a claim." *Brown v. City of New York*, 95 N.Y.2d 389, 392-93 (N.Y.2000). "An adequate notice of claim allows the governmental entity 'to examine a potential claim to determine whether such claim should be settled or satisfied without subjecting the parties to costly litigation.'" *Javed v. Shuang Zhang*, 872 F. Supp. 2d 194, 198 (N.D.N.Y. 2012)(quoting *Mroz v. City of Tonawanda*, 999 F. Supp. 436, 453 (W.D.N.Y.1998).

"The Second Circuit has . . . determined that, not only does the General Municipal Law control when a plaintiff sues a [municipality] for tortious conduct, but it also controls those claims against any employee of a city 'if the municipality is required to indemnify the defendant pursuant to the General Municipal Law or any other statutory provision and is therefore the real party in interest.'" *Kennedy v. City of Albany*, 2015 WL 6394513, at *2 (N.D.N.Y. Oct. 22, 2015)(quoting *Conte v. Cty. of Nassau*, 596 Fed. Appx. 1, 5 (2d Cir. 2014)(interior quotation marks and citation omitted)). Such is the circumstance here. General Municipal Law § 50–j provides that a municipality "shall be liable for, and shall assume the liability to the extent that it shall save harmless, any duly appointed police officer of such municipality . . . for any negligent act or tort, provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment." N.Y. Gen. Mun. Law § 50-j(1); *see also LaGrange v. Ryan*, 142 F. Supp.2d 287, 295 (N.D.N.Y. 2001).[24] Thus, the notice must accurately identify the individuals against whom the claim is brought. *See D.C. v. Valley Cent. Sch. Dist.*, 2011 WL 3480389 at *2 (S.D.N.Y. June 29, 2011).[25]

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir.1999) (internal quotation marks and citations omitted); *see also Davidson v. Bronx Mun.*

---

[24](stating that notice of claim requirements are not limited to just negligence claims but must also be served for "intentional tort actions against police officers").

[25](noting that "the Court must construe the notice of claim strictly to ensure that the defendants are properly named as respondents in the notice of claim")

*Hosp.*, 62 N.Y.2d 59, 62 (N.Y. 1984);[26] *Hillary v. Village of Potsdam*, 2015 WL 902930, at *9 (N.D.N.Y. Mar. 3, 2015)(same). "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Horvath v. Daniel*, 423 F. Supp.2d 421, 423 (S.D.N.Y. 2006). Although a Notice of Claim need not provide the required information with "literal nicety or exactness," *Phillipps v. N.Y. City Transit Auth.*, 68 A.D.3d 461, 462 (1st Dep't 2009), "[a]ny theory of liability omitted from the notice of claim may not be included in a subsequent lawsuit." *Hazan v. City of New York*, 1999 WL 493352, at *6 (S.D.N.Y. July 12, 1999).

Turning first to the three July 2, 2015 Notices of Claim, and assuming for purposes of argument that these were served on Defendants, they failed to provide sufficient factual allegations to put Defendants on notice of the state law claims alleged in this action. These Notices of Claim all pertain to a traffic ticket issued to Plaintiff on April 7, 2015, a date different than the one underlying the claims in the instant action. Although Plaintiff contends that his use of the April 7, 2015 date was a mistake, he points to no authority requiring a recipient of a Notice of Claim to analyze it to determine whether it *might* be referring to a *different* event then indicated in the notice of claim. By using the wrong date, Plaintiff's July 2, 2015 Notices of Claim deprived the Village of the ability to collect evidence, evaluate the merits of the state law claims alleged in this case, and determine whether these claims should be settled or satisfied without subjecting the parties to costly litigation. Thus, the July 2, 2015 Notices of Claim provide an insufficient predicate for any of the state law claims asserted here.

---

[26] ("failure to comply with provisions requiring notice and presentment of claims prior to the commencement of litigation requires dismissal")

26

Turning to the August 3, 2015 Notices of Claim, each was drafted and verified on August 3, 2015. *See* Compl., Ex. A, pp. 2-4. August 3, 2015 is more than 90 days past April 22, 2015, the date of the traffic ticket underlying the state law claims of false arrest, assault and battery, and illegal search alleged in this action. Although denominated as "Amended Notices of Claim," these Notices of Claim do not indicate what they were intended to amend. Because the August 3, 2015 Notices of Claim are based upon a different event than the July 2, 2015 Notices of Claim, and because Plaintiff apparently never moved for leave to serve a late Notice of Claim or to have his August 3, 2015 Notices of Claim deemed served *nunc pro tunc* to an earlier time, the August 3, 2015 Notices of Claim are untimely as to the state law claims of false arrest, assault and battery, and illegal search. These claims are dismissed as to all Defendants.

Moreover, the August 3, 2015 Notices of Claim fail to provide sufficient factual predicates upon which state law claims of negligence and gross negligence could be based. These Notices of Claim allege only that Guco pulled Plaintiff over, gave him a ticket for running a red light, and then lied about the facts at the ensuing trial. These factual allegations are insufficient to put Defendants on notice of a basis for the claims of negligence or gross negligence, *see Fiedler v. Incandela,* 2016 WL 7406442, at *14 (E.D.N.Y. Dec. 6, 2016),[27] and thus deprived Defendants of the ability to collect evidence,

---

[27]The Eastern District wrote in *Friedler*,

To prevail on a claim for negligence under New York law, "a plaintiff must establish (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff." [*Frederique v. County of Nassau,* 168 F. Supp. 3d 455, 484 (E.D.N.Y. 2016)] (internal quotation omitted); *see also* [*Vega v. Fox,* 457 F. Supp.2d 172, 183 (S.D.N.Y. 2006)]("The existence of a duty of care is a legal, policy-laden declaration reserved for judges.") (internal quotation omitted). The defendant's duty must not be "merely

(continued...)

evaluate the merits of the alleged negligence or gross negligence claims, and determine whether these claims should be settled or satisfied without subjecting the parties to costly litigation. Consequently, the August 3, 2015 Notices of Claim are insufficient to serve as necessary predicates for the state law claims of negligence and gross negligence, and these claims are dismissed as to all Defendants.

However, one of the August 3, 2015 Notices of Claim could be construed as providing notice of the intentional torts of malicious prosecution and abuse of process. *See* Compl., Ex. A, p. 2. "Malicious prosecution and abuse of process claims accrue when there is a favorable termination of criminal proceedings against the plaintiff." *Oka v. County of Suffolk*, 2014 WL 198821, at *4 (E.D.N.Y. Jan. 13, 2014); *see TADCO Constr. Corp. v. Dormitory Auth. of NY*, 700 F. Supp.2d 253, 273 (E.D.N.Y. 2010).[28] The Complaint alleges that "[f]ollowing the bench trial on or about June 29, 2015, Plaintiff was advised that the traffic ticket was dismissed and/or that he was not guilty of the infraction." Compl. ¶ 21. Because June 29, 2015 is less than 90 days before August 3, 2015, the August 3, 2015 Notice of Claim alleging "Liability for Intentional Torts" was timely filed as to the malicious

---

[27](...continued)
a general duty of care to society but a specific duty to the plaintiff, for 'without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.' " *Breitkopf v. Gentile*, 41 F.Supp.3d 220, 272 (E.D.N.Y. 2014) (quoting *Lauer v. City of New* York, 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112, 733 N.E.2d 184 (2000)). It is well established that "a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Moreover, "[a] claim of harm predicated solely on intentional acts may not give rise to a claim of negligence." *Ortiz v. City of New York*, No. 15 Civ. 2206, 2016 WL 7009059, at *3 (S.D.N.Y. Nov. 30, 2016) (citing *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993)).

*Fiedler,* 2016 WL 7406442, at *14.

[28]("[C]laims for malicious prosecution and abuse of process do not accrue until the underlying action which is the basis for the claim is terminated in the plaintiff's favor by dismissal.")

prosecution and abuse of process claims. Accordingly, the motion is denied as to the malicious prosecution and abuse of process claim brought against Officer Guca, and, under a theory of *respondeat superior* liability, against the Village of Yorkville. *See Cort v. Marshall's Dept. Store*, 2015 WL 9582426, at *2 (E.D.N.Y. Dec. 29, 2015);[29] *see Tchatat v. City of New York*, 2015 WL 5091197, at *17 (S.D.N.Y. Aug. 28, 2015);[30] *Cort*, 2015 WL 9582426, at *3.[31] However, DeLuca is not mentioned in any of the August 3, 2015 Notices of Claim. Therefore, all state law claims against DeLuca are dismissed.

### n. State Law Malicious Prosecution and Abuse of Process Claims

Defendants argue that if Plaintiff's state law claims are not dismissed for failure to file appropriate notices, the claims for malicious prosecution and abuse of process should be dismissed because the Complaint fails to allege sufficient facts to plausibly satisfy the elements of either claim.

### 1. Malicious Prosecution

The elements of claim for malicious prosecution under New York law are: "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Battisti v. Rice*, 2017 WL

---

[29]("[I]n order to state a *respondeat superior* claim, a plaintiff must plead facts that plausibly allege that the predicate torts were committed 'within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests.'")(quoting *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014))

[30](*Respondeat superior* applies to a tort committed by an employee in the course of the performance of his or her duties, even if such duties are carried out in an irregular fashion or with disregard of instructions.") (internal citation and quotation marks omitted), *recons. granted in part by*, 2015 WL 6159320 (S.D.N.Y. Oct. 20, 2015)

[31]("The same principle applies equally to intentional torts, including assault and battery; for respondeat superior to apply, the employee must have committed the intentional tort while acting within the scope of employment.")

78891, at *9 (E.D.N.Y. Jan. 9, 2017)(quoting *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted)).  "Unlike federal law, a seizure is not required for a malicious prosecution claim under state law." *Mangino v. Inc. Village of Patchogue*, 739 F. Supp. 2d 205, 229 (E.D.N.Y. 2010), *on reconsideration in part*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011).

The first three elements could plainly be established based upon the allegations that Plaintiff was pulled over for running a red light when the light was yellow, Guco advanced the prosecution by issuing a ticket, and the ticket was dismissed following trial. *See id.*[32]  The fourth element, actual malice as a motivation for defendant's actions, could reasonably be inferred from the allegations that Plaintiff was ticketed, and treated harshly, because of his race.  These allegations are sufficient to give Defendants fair notice of Plaintiff's malicious prosecution claim and the grounds upon which it rests. *See  Blot v. Town of Colonie*, 2017 WL 61943, at *17 (N.D.N.Y. Jan. 5, 2017).[33] The motion on this ground is denied.

## 2.  Abuse of Process

The elements of a claim for abuse of process under New York law are that a defendant: "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in

---

[32]("New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence. Instead, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence.")

[33]("[T]he Supreme Court has held that . . . the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that 'give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests.'")(quoting *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 212, n. 17 (N.D.N.Y. 2008)(in turn citing Supreme Court cases)(emphasis in *Bolt*)).

order to obtain a collateral objective that is outside the legitimate ends of the process."

*Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003).

> [A] claim of malicious abuse of process requires process be issued for a collateral objective outside the legitimate ends of process. In evaluating this element, the Second Circuit expressly distinguishes between a "malicious motive" and an "improper purpose"; only the latter suffices to meet the "collateral objective" prong of the abuse of process standard. *See Savino*, 331 F.3d at 77 ("In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action.... '[I]mproper motive is not enough.' " (quoting *Dean v. Kochendorfer*, 237 N.Y. 384, 143 N.E. 229 (1924))); *see also Roeder v. Rogers*, 206 F.Supp.2d 406, 414 (W.D.N.Y. 2002) (dismissing abuse of process claim on summary judgment because "malicious motive, without more, does not give rise to [such] a cause of action" (citation and quotation marks omitted)); *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324, 1326–27 (1984) ("A malicious motive alone ... does not give rise to a cause of action for abuse of process."). "Accordingly, to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77.

*Mangino*, 739 F. Supp. 2d at 232.

The Complaint fails to allege facts that could plausibly establish the "collateral objective" prong of the abuse of process standard. The state law abuse of process claim is dismissed without prejudice to repleading.

### o. Punitive Damages

Defendants argue that Plaintiff's demand for punitive damages must be struck because municipalities are immune from punitive damages, and because the Complaint fails to allege conduct by Guco[34] that warrants an award of punitive damages.

Defendants are correct that a municipality is immune from the imposition of punitive

---

[34] Defendants make the same argument as to DeLuca, but the Court need not reach this issue because all claims against DeLuca have been dismissed.

damages under 42 U.S.C. § 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Ciraolo v. City of N.Y.*, 216 F.3d 236, 239–40 (2d Cir. 2000), and state law. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 386 (N.Y. 1987). Thus, Plaintiff's demand for punitive damages against the Village is struck.

As to Guco's liability for punitive damages, the law provides that "[t]o recover punitive damages under § 1983 against a government official in his individual capacity, the Plaintiff must show that the official acted with a malicious or evil intent or in callous disregard of the Plaintiff's federally protected rights." *Pritchard v. Town of New Hartford*, 2016 WL 4523986, at *4 n.2 (N.D.N.Y. Aug. 22, 2016)(citing *Smith v. Wade*, 461 U.S. 30 (1983)). Similarly, "[t]o obtain punitive damages in ordinary tort actions, a New York plaintiff not only must show that the defendant committed a tort, but also must demonstrate the existence of 'circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton.'" *Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003)*, certified question answered*, 818 N.E.2d 1100 (N.Y. 2004)(quoting *Prozeralik v. Capital Cities Communications, Inc.*, 82 N.Y.2d 466, 479 (N.Y. 1993)); *see Cookware Co. (USA), LLC v. Austin*, 2016 WL 7378762, at *6 (S.D.N.Y. Dec. 8, 2016)(same).

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff has presented sufficient factual allegations plausibly supporting the conclusion that Guco acted with a malicious or evil intent or in callous disregard of Plaintiff's federal and state rights when he pulled Plaintiff over, ticketed him without basis, pulled

Plaintiff out of his vehicle and "slammed" him on the hood, and then continued the prosecution on the traffic ticket even though there was no basis for it.  This is sufficient to allow the demand for punitive damages against Guco to proceed.   Thus, Defendants' motion in this regard is denied.

**V.     CONCLUSION**

For the reasons discussed above, Defendants' motion to dismiss [Dkt. # 4] is **GRANTED IN PART and DENIED IN PART**.  The motion is granted in the following respects:

- All claims against the Village of Yorkville Police Department are dismissed.

- All claims against Chief DeLuca and Officer Guca in their official capacities are dismissed.

- All §1983 claims against Chief DeLuca are dismissed without prejudice to repleading.

- All claims premised upon the Fifth Amendment are dismissed.

- All claims premised upon the Eighth Amendment are dismissed.

- All claims premised upon the Ninth Amendment are dismissed.

- The Fourteenth Amendment due process claim based upon the alleged search of Plaintiff's vehicle is dismissed.

- The Fourteenth Amendment due process claim based upon Plaintiff's arrest is dismissed.

- The Section 1983 False Testimony claim against Officer Guca is dismissed.

- The Section 1983 conspiracy claim based upon an alleged agreement between the

Defendants to suborn perjury at Plaintiff's traffic ticket trial is dismissed.

- The Section 1983 claim based upon the alleged concealment of exculpatory material is dismissed without prejudice to repleading.

- The Section 1983 Fourteenth Amendment due process claim based on the excessive use of force is dismissed.

- The Section 1983 Fourteenth Amendment due process claim based on the allegation that Defendants permitted and encouraged perjured testimony to be produced by the prosecution at Plaintiff's traffic ticket trial is dismissed.

- The Section 1983 First Amendment claim is dismissed without prejudice to repleading.

- The state law claims of false arrest, assault and battery, illegal search, negligence, and gross negligence are dismissed.

- The state law claims of malicious prosecution and abuse of process are dismissed as to Chief DeLuca.

- The state law claim of abuse of process claims against Officer Guca and the Village of Yorkville are dismissed without prejudice to repleading.

- Any demand for punitive damages against the Village of Yorkville is struck from the Complaint.

The motion is denied in all other the respects.

If Plaintiff intends to replead any of the claims that were dismissed without prejudice to repleading, an amended pleading must be filed within ten (10) days of the date of this Decision and Order. The failure to file an amended pleading within this period of time will be deemed an abandonment of all claims dismissed without prejudice to repleading. If an

34

amended pleading is filed, Defendants are granted leave to move to dismiss some or all of the repleaded claims.

Based upon the above, the Village of Yorkville Police Department is terminated as a defendant in this action. If Plaintiff does not replead any claims against Chief DeLuca within ten (10) days, he will also be terminated as a defendant in this action.

**IT IS SO ORDERED.**

Dated: January 30, 2017

Thomas J. McAvoy
Senior, U.S. District Judge